## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER SOUDERS[1］<br><br>        *Plaintiff,*<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY<br>2707 Martin Luther King, Jr. Avenue, S.E.<br>Washington, D.C. 20528<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security,<br>2707 Martin Luther King, Jr. Avenue, S.E.<br>Washington, D.C. 20528<br><br>GREYSON McGILL, in his official capacity<br>as Chief of Staff to the Under Secretary for<br>Management at the Department of Homeland<br>Security,<br>2707 Martin Luther King, Jr. Avenue, S.E.<br>Washington, D.C. 20528<br><br>DEPARTMENT OF DEFENSE<br>1400 Defense Pentagon<br>Washington, D.C. 20301<br><br>PETE HEGSETH, in his official capacity as<br>Secretary of Defense,<br>1000 Defense Pentagon<br>Washington, D.C. 20301<br><br>MICHAEL COGAR, in his official capacity as<br>Deputy Assistant Secretary of Defense for<br>Civilian Personnel Policy,<br>4000 Defense Pentagon<br>Washington, D.C. 20301<br><br>        *Defendants.* | Case No. 25-_____ |

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the individual Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Plaintiff Peter Souders was terminated from his employment, by order of the federal government, in retaliation for his private speech on a matter of significant national interest and attention, in clear violation of the First Amendment and the foundational freedoms it protects.

2.      Until recently, Mr. Souders was an engineer and project manager working for a government contractor, Advanced Concepts Enterprises, Inc. ("ACES"), at U.S. Coast Guard Headquarters. Mr. Souders managed engineering projects to modernize Coast Guard vessels' communications technology, and despite his relatively short tenure, his work was highly valued.

3.      Nonetheless, on September 17, 2025, leaders at the highest levels of the U.S. Department of Homeland Security ("DHS"), over email, discussed firing Mr. Souders for his protected, political speech on social media and, just a few hours later, ordered his supervisors at the Coast Guard and ACES to do so.

4.      The next day, September 18, 2025, Mr. Souders was informed that he could no longer work at the Coast Guard as a contractor. Because the federal government would not allow ACES to employ him on the project for which he was hired, the company was forced to terminate Mr. Souders's employment. Both his Coast Guard and ACES supervisors expressed regret at his termination; it seemed that their hands were tied.

5.      Mr. Souders was fired from his private employer not because his work performance was poor, but because the Defendants demanded that he be fired for his private, political speech.

6.      Last year, the Supreme Court reaffirmed a basic tenet of First Amendment law: "Government officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *NRA v. Vullo*, 602 U.S. 175, 180 (2024).

7.      The Defendants violated this bedrock constitutional principle and deliberately had a private employer punish Mr. Souders for the content of his protected, political speech. This action is unconstitutional First Amendment retaliation, and Mr. Souders is entitled to reinstatement of his ability to work for the Coast Guard and its contractors.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's causes of action arise under the Constitution and laws of the United States.

9.      The Court has authority to issue declaratory, injunctive, and equitable relief pursuant to 28 U.S.C. § 2201 and its inherent equitable powers.

10.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

## PARTIES

11.     Plaintiff Peter Souders is an engineer who, until recently, was employed by ACES as a Junior Engineering Support Tech and worked on projects related to communications technology at Coast Guard Headquarters in Washington, D.C.

12.     Defendant DHS is headquartered in Washington, D.C. and is an agency of the United States subject to the jurisdiction of this Court.

13.     Defendant Kristi Noem is sued in her official capacity as Secretary of Homeland Security. She is the head of DHS and maintains an office in Washington, D.C.

14.     Defendant Greyson McGill is sued in his official capacity as the Chief of Staff to the Under Secretary for Management at DHS. He maintains an office in Washington, D.C.

15.     Defendant Department of Defense ("DoD") is headquartered in Arlington, Virginia and is an agency of the United States subject to the jurisdiction of this Court.

16.     Defendant Pete Hegseth is sued in his official capacity as Secretary of Defense.

17.     Defendant Michael Cogar is sued in his official capacity as Deputy Assistant Secretary of Defense for Civilian Personnel Policy.

## FACTUAL ALLEGATIONS

### Mr. Souders's Background and Employment

18.     Born and raised in Washington, D.C., Mr. Souders graduated from Boston College in 2012 with a Bachelor of Science in physics. In 2019, he earned a Master's of Science in mechanical engineering from Tufts University.

19.     Putting his training to use in public service, in January 2021, Mr. Souders began as an assistant port engineer with Military Sealift Command, where he worked directly for the U.S. Navy as a civilian employee, executed engineering projects, sometimes while on remote, overseas naval bases for months on end. During this time, Mr. Souders received positive feedback and multiple promotions and raises. In 2025, he began to search for a similar role that demanded less travel.

20.     Still committed to public service, on July 14, 2025, Mr. Souders began his new role with ACES, where he worked exclusively on Coast Guard projects at Coast Guard Headquarters. Mr. Souders served as a project manager and worked between engineers and their supervisors at the Coast Guard to ensure that engineering projects were delivered on schedule.

21.     The engineering projects that Mr. Souders worked on were critical to modernizing the Coast Guard fleet. Mr. Souders and the engineers with whom he worked had been executing a yearslong project to ensure that all Coast Guard craft—from air stations and Coast Guard bases to smaller craft—had compatible systems that could reliably and securely communicate with one another.

22.    Mr. Souders received nothing but positive feedback during his time at ACES and the Coast Guard. He caught issues before they became problems and received praise for his attention to detail and problem solving. He was even told that he would be promoted in 2026 to a more senior engineering role.

**DoD/DHS Officials Order Mr. Souders's Termination**

23.    On September 17, 2025, Michael Cogar, Deputy Assistant Secretary of Defense for Civilian Personnel Policy, sent an email to Greyson McGill, Chief of Staff for the Under Secretary for Management at DHS. Mr. Cogar told Mr. McGill that he (Mr. Cogar) had been "notified of inappropriate behavior" by a "USCG contractor." Shortly after 11:00 a.m., Mr. McGill responded that he would "take care of the USCG contractor matter on our side."

24.    Sixteen minutes later, Mr. McGill emailed members of the Office of the Chief Security Officer, including Iwona Horyn, Acting Chief Security Officer at DHS, and Paul Stackhouse, Deputy Under Secretary for Management at DHS. Mr. McGill informed them that "DoW [DoD] leadership identified a social media post linked to Peter Souders . . . , who has been flagged as a USCG contractor." He asked them to confirm whether Mr. Souders was currently working as a contractor at DHS, and asked for a response by 2:00 p.m. the same day.

25.    Three hours later, Ms. Horyn confirmed that Mr. Souders was working as a contractor with ACES at Coast Guard Headquarters.

26.    Roughly an hour and a half after that—and less than five hours after Mr. McGill had initially responded to Mr. Cogar—Mr. McGill emailed the chain to "confirm that today is Mr. Souders' last day here at DHS," and ordered DHS and Coast Guard personnel to "execute all necessary offboarding and access termination actions without delay."

27.    Upon information and belief, Mr. McGill may have been referring to social media posts by Mr. Souders relating to Charlie Kirk on Facebook on or around September 10, 2025.

Nowhere on his Facebook page does Mr. Souders identify himself as a government contractor or employee.

28.    Mr. Souders, for his part, had no inkling that he was about to be fired, except for a single, strange phone call he had received from an individual identifying himself as a Navy captain a few days earlier, on September 13, 2025. The caller said he had some questions and "hope[d]" that Mr. Souders had the right answers. The caller informed Mr. Souders that some of Mr. Souders's social media statements had been sent to Navy leadership. The caller said that, in his opinion, the statements were within Mr. Souders's First Amendment rights, but that was not everybody's opinion. The caller told Mr. Souders that he would note that Mr. Souders was no longer employed by the Navy. Mr. Souders thought nothing more of the call.

29.    When Mr. Souders left work on September 17, 2025, however, his ID badge did not allow him to exit the building. Because badge issues were not uncommon, Mr. Souders thought little of this, too, and planned to address the issue the next day.

**Mr. Souders Is Informed of His Termination**

30.    The next day, September 18, 2025, Mr. Souders was given a visitor's badge to enter the building and went to the appropriate office to fix what he believed was an issue with his ID badge.

31.    Shortly thereafter, Mr. Souders received a text message from an ACES employee responsible for hiring—essentially Mr. Souder's ACES supervisor—telling him to call human resources, which Mr. Souders did. He then spoke with ACES's CFO, who said that ACES had received an email from the federal government directing that Mr. Souders's work for the Coast Guard be terminated. The CFO told Mr. Souders that he (the CFO) did not understand or agree with that decision, and that Mr. Souders should direct questions to his contracting officer's representative ("COR") at the Coast Guard.

32.    Mr. Souders therefore reached out to his COR, effectively the Coast Guard-ACES liaison. The COR told Mr. Souders that he knew nothing about the reason for Mr. Souders's termination other than an email thread he had been forwarded containing communications from officials at DHS and DoD. The COR told Mr. Souders that he thought the situation was bizarre, but there was nothing he could do. Mr. Souders cleaned out his desk, returned his ID badge, and left.

33.    Shortly thereafter, Mr. Souders called ACES's CFO again. The CFO informed him that because ACES had employed Mr. Souders to work as a Coast Guard contractor, ACES would have to terminate his employment. The CFO expressed regret and disbelief, telling Mr. Souders that the situation was strange but his hands were tied.

34.    A few days later, Mr. Souders received his termination report from ACES (the "Termination Report"). The Termination Report contains a list of options (next to boxes) under the header "Check Reason for Termination," such as "layoff," "misconduct," and "unsatisfactory job performance." No box was checked. In a section of the Termination Report labeled "additional notations," an ACES representative had written, "By direction of Government. Unable to work for DHS."

35.    Since his termination, Mr. Souders has experienced significant financial and emotional harms. Mr. Souders had been a valued employee, first at the Navy as a direct civilian employee, and then at the Coast Guard through ACES. He thought that his work with the Coast Guard was the start of an intellectually fulfilling and values-driven long-term career path, using his skills and intellect to work with others to achieve goals in the public interest.

36.    Instead, in the space of a few hours, Defendants wrested Mr. Souders's career away from him because of his (entirely unrelated) political, protected speech. This is First Amendment retaliation, plain and simple.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIRST AMENDMENT**
**(RETALIATION FOR PROTECTED SPEECH)**
**(Against All Defendants)**

37.    Paragraphs 18-36 are incorporated and realleged as if fully set forth herein.

38.    The First Amendment to the U.S. Constitution guarantees all individuals "the freedom of speech," which includes free expression and association. These rights allow government employees and contractors to speak on matters of public concern without fear of retribution and retaliation.

39.    Mr. Souders's posts on Facebook regarding the shooting of Charlie Kirk unquestionably amount to protected speech on a matter of public concern. The Defendants retaliated against Mr. Souders because of that speech and intentionally forced the termination of his Coast Guard contract and, as a direct result, the termination of his employment.

40.    Mr. Souders's protected speech had no known impact on the services he and others performed on his contract. In any event, upon information and belief, the Defendants did nothing to determine or investigate whether Mr. Souders's protected speech had actually caused any kind of disruption and simply terminated his ability to work on federal government contracts mere hours after learning of the social media post.

41.    Neither the Coast Guard nor ACES would have terminated Mr. Souders in the absence of Mr. Souders's speech and the Defendants' retaliation. Mr. Souders had received glowing performance reviews from his work at ACES and the Coast Guard since the beginning of

his employment in July. Indeed, Mr. Souders's managers expressed disbelief and disappointment at his termination because he had been such a high performer.

42.     Mr. Souders has suffered adverse and harmful effects, including, but not limited to lost and/or jeopardized present and/or future financial opportunities.

## SECOND CAUSE OF ACTION
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 & 2202
### (Against All Defendants)

43.     Mr. Souders is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Mr. Souders and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have the authority to order the termination of Mr. Souders in retaliation for the exercise of his First Amendment rights.

44.     Mr. Souders has suffered adverse and harmful effects, including, but not limited to, lost and/or jeopardized present and/or future financial opportunities.

## THIRD CAUSE OF ACTION
### WRIT OF MANDAMUS
### (Against All Defendants)

45.     In the alternative, Mr. Souders is entitled to a writ of mandamus commanding Defendants to return him to the status quo ante by rescinding their order that he be terminated from his contractor position at the Coast Guard. Defendants have a legal duty to refrain from ordering the termination of Mr. Souders in retaliation for his exercise of his First Amendment rights, and absent this Court granting relief, there is no other adequate means of redress.

46.     The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies. To the extent relief is unavailable

under the Constitution, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Peter Souders requests that the Court award him the following relief:

(1) A declaration that Defendants' order that Plaintiff's employment be terminated was in retaliation for protected speech under the First Amendment and that Plaintiff is entitled to appropriate relief;

(2) An order requiring Defendants to immediately reinstate Plaintiff's ability to work for the Coast Guard and prohibiting Defendants from taking any further adverse personnel action against Plaintiff in retaliation for his exercise of his First Amendment rights;

(3) Equitable relief as the Court deems just and proper, including any compensation to make Plaintiff whole following his unlawful termination;

(4) An award of the costs of this action and reasonable attorneys' fees under the Equal Access to Justice Act or any other applicable law; and

(5) Such other relief as the Court may deem just and proper.

Dated: November 12, 2025
     Washington, DC

Respectfully submitted,

/s/ Amy Jeffress

Amy Jeffress (DDC No. 449258)
HECKER FINK LLP
1050 K Street N.W., Suite 1040
Washington, DC 20001
T: (202) 742-2655
ajeffress@heckerfink.com

Mike Ferrara
Anna Collins Peterson*
Thea Raymond-Sidel*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
mferrara@heckerfink.com
apeterson@heckerfink.com
traymond-sidel@heckerfink.com

Mark S. Zaid (DDC No. 440532)
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue N.W., Suite 700
Washington, DC 20036
T: (202) 498-0011
Mark@MarkZaid.com

Heidi Burakiewicz (DDC No. 473973)
BURAKIEWICZ & DEPRIEST
1015 15th Street N.W., Suite 600
Washington, DC 20005
T: (202) 856-7500
HBurakiewicz@bdlawdc.com

*pro hac vice motion forthcoming