**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER SOUDERS,<br>*Plaintiff*,<br>v.<br>DEPARTMENT OF HOMELAND SECURITY et al.,<br>*Defendants*. | Civil Action No. 25-3924 (TJK) |

**MEMORANDUM OPINION & ORDER**

Peter Souders was fired from his job with a U.S. Coast Guard contractor in September 2025. He alleges that federal officials forced his employer to fire him because of comments he posted on social media about the murder of conservative activist and organizer Charlie Kirk. So Souders sued those officials and their respective agencies. He brings three claims for relief, asserting first, that Defendants retaliated against him for protected speech in violation of the First Amendment; second, that he is entitled to a declaratory judgment; and third, that he deserves a writ of mandamus. Defendants move to dismiss the complaint in its entirety, either for lack of jurisdiction or because Souders has failed to state a claim. For the reasons explained below, the Court disagrees with Defendants that Souders's First Amendment claim sounds in contract and so belongs in the Court of Federal Claims. That said, the Court will dismiss Souders's second and third claims because neither can be maintained as a standalone cause of action. So the Court will grant Defendants' motion in part and deny it in part.

## I. Background

Before his termination, Souders worked as an engineer and project manager for Advanced Concepts Enterprises, Inc. ("ACES"), a contractor for the United States Coast Guard—an agency

of the U.S. Department of Homeland Security ("DHS"). *See* ECF No. 1 ("Compl.") at ¶ 11. In this role, Souders "worked on projects related to communications technology at Coast Guard Headquarters in Washington, DC." *Id.* During his tenure, Souders says that "[he] received nothing but" "praise" and "positive feedback [from] . . . the Coast Guard." *Id.* ¶ 22.

About two months after Souders joined ACES, conservative activist and organizer Kirk was shot and killed while speaking at a college event in Orem, Utah. *See Utah Valley Shooting Updates*, Fed. Bureau of Investigation, https://www.fbi.gov/news/press-releases/utah-valley-shooting-updates (last updated Sept. 12, 2025).[1] Souders alleges that he was among those who published "social media posts relating to Charlie Kirk on Facebook" after the shooting. Compl. ¶ 27. Those posts—whatever they said—allegedly did not sit well with officials at the Departments of Defense and Homeland Security. *See id.* ¶¶ 23–29. Indeed, Souders alleges that the following week, Michael Cogar, Deputy Assistant Secretary of Defense for Civilian Personnel Policy, contacted Greyson McGill, Chief of Staff for DHS's Under Secretary for Management, about "inappropriate behavior" by a "[Coast Guard] contractor." *Id.* ¶ 23. McGill responded that he would "take care of the . . . matter." *Id.* He then allegedly emailed DHS staff about "a social media post linked to . . . Souders" and ordered them to "offboard[]" Souders "without delay." *Id.* ¶¶ 24, 26.

Days later, Souders says his employer, ACES, got "an email from the federal government directing that Souders's work for the Coast Guard be terminated." Compl. ¶ 31. ACES told Souders that its hands were tied; because the company "had employed [him] to work as a Coast Guard

[1] Souders only alludes to this fact in the complaint, *see* Compl. ¶ 39, but the Court may take judicial notice of it. "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

contractor, [it] would have to terminate his employment." *Id.* ¶ 33.

Two months later, Souders sued Cogar and McGill, the Departments of Defense and Homeland Security, and the officials in charge of those agencies. *See generally* Compl. ¶¶ 11–17. Count I alleges that Defendants unlawfully retaliated against him for protected speech in violation of the First Amendment. *See* Compl. ¶¶ 37–42. Count II seeks a declaration that Defendants acted unlawfully and outside the scope of their authority. *See id.* ¶¶ 43–44. And Count III seeks, in the alternative, a writ of mandamus commanding Defendants to "refrain from ordering [Souders's] termination . . . in retaliation for his exercise of his First Amendment rights." *Id.* ¶ 45. Among other relief, Souders seeks an order "requiring Defendants to immediately reinstate [his] ability to work for the Coast Guard." Compl. at 10 (Request for Relief). Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* ECF No. 18. They argue that the Court lacks subject-matter jurisdiction over Souders's First Amendment retaliation claim (Count I) and mandamus claim (Count III), and that Souders's request for declaratory judgment (Count II) fails to state claim for relief. *Id.*

## II. Legal Standards

"Federal [district] courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Absent subject-matter jurisdiction over a case, the Court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citation omitted); Fed. R. Civ. P. 12(h)(3). Under Rule 12(b)(1), the plaintiff bears the burden to establish the Court's subject-matter jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). In evaluating such a motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[] [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137,

1139 (D.C. Cir. 2011) (cleaned up). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the Court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Doe v. WMATA*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (citation modified).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

### A. The Court has Subject-Matter Jurisdiction Over Souders's First Amendment Retaliation Claim (Count I)

In his first count, Souders asserts that Defendants violated his rights under the First Amendment by retaliating against him for protected speech. *See* Compl. ¶¶ 37–42. They did so, Souders says, by rescinding his eligibility to work for the Coast Guard and effectively forcing his employer to terminate him. *Id.* ¶¶ 4, 39–42. Defendants argue that the Court lacks subject-matter jurisdiction over this claim, because it "challenge[s] . . . an employment action that arises through [Souders's] contractual relationship with the United States," and so it is covered by the Contract Disputes Act ("CDA"), which requires that it be brought in the Court of Federal Claims. ECF No. 18-1 at 9.

The parties agree that if Souders's claim is covered by the CDA, the Court lacks jurisdiction over it. Through the Administrative Procedure Act ("APA"), "Congress has provided a limited waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). But that "waiver does not apply . . . if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* at 1106 (internal quotation marks omitted).[2] The CDA is such a statute. As relevant here, the CDA governs certain types of government contracts, including those for "the procurement of services." 41 U.S.C. § 7102(a)(2). It provides that "claim[s] by a contractor against the Federal Government relating to a [procurement] contract shall be submitted to the [agency's] contracting officer for a decision" within six months of the claim's accrual. *Id.* § 7103(a)(1). The contractor can appeal an adverse decision to an agency board and, after that, to the Court of Appeals for the Federal Circuit. *See id.* §§ 7104, 7107(a)(1). Alternatively, the contractor may, after receiving the contracting officer's decision, "bring an action directly on the claim in the United States Court of Federal Claims." *Id.* § 7104(b). Thus, "[w]hen the CDA applies to a claim, its procedures provide the exclusive remedy for that dispute, and this Court lacks jurisdiction to hear it." *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 68 (D.D.C. 2009), *aff'd sub nom.*, 637 F.3d 311 (D.C. Cir. 2011).

[2] The parties do not address whether, if Souders's claim is not covered by the CDA, the APA's sovereign immunity waiver otherwise provides the Court jurisdiction over the claim. Putting the CDA to the side, the Court easily concludes that the APA's waiver applies. Section 702 of the APA permits claims "seeking relief other than money damages and stating a claim that an agency or an officer or employee [of the United States] acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. Souders's First Amendment claim for declaratory and injunctive relief fits the bill. Indeed, "sovereign immunity does not bar suits for injunctive or declaratory relief against federal officers acting unconstitutionally or beyond statutory authority." *Am. Bar Ass'n*, 783 F. Supp. 3d at 243 (noting sovereign immunity does not bar a "First Amendment retaliation claim . . . for specific relief"). It does not matter that Souders does not explicitly bring this claim under the APA—as the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

The parties also agree that the Coast Guard's contract with ACES is a procurement contract subject to the CDA; they dispute only whether Souders's claim is subject to the CDA's exclusive review scheme. *See* ECF No. 19 at 11–12.[3]

A claim falls within the CDA's ambit if it is "at its essence a contract [claim]." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 76 (D.C. Cir. 1985) (citation modified). The two-pronged test articulated by the D.C. Circuit in *Megapulse, Inc. v. Lewis* guides that inquiry. *See* 672 F.2d 959, 968 (D.C. Cir. 1982).[4] Courts must consider (1) "the source of the rights upon which the plaintiff bases its claims"; and (2) "the type of relief sought." *See id.* The "test is conjunctive, requiring satisfaction of both elements to provide exclusive jurisdiction to the Court of Federal Claims." *Am. Acad. of Pediatrics v. HHS*, 816 F. Supp. 3d 27, 47 (D.D.C. 2026).

The first prong is determinative here. Under that prong, the Court must determine whether Souders asserts a violation of "rights exist[ing] prior to and apart from rights created under the contract." *Crowley*, 38 F.4th at 1107 (citation modified). Relevant to that determination is whether "it is possible to conceive of th[e] dispute as entirely contained within the terms of the contract," such that "[t]he question presented by the complaint could be phrased as whether the contract forbids termination under the[] [circumstances]." *Ingersoll-Rand Co.*, 780 F.2d at 78.

Defendants argue that Souders's "claims naturally arise[] under the terms of his contract" because "he challenges the way that he was terminated, and the substantiation provided by the

---

[3] Defendants attach the Coast Guard's contract with ACES and its associated Statement of Work (SOW) as exhibits to their motion to dismiss. *See* ECF No. 18-2 (ACES contract); ECF No. 18-3 (SOW). The Court may consider these documents, and other "relevant materials outside the pleadings," to determine its jurisdiction over Souders's claims. *Bank of Am., N.A. v. FDIC*, 908 F. Supp. 2d 60, 78 (D.D.C. 2012).

[4] The *Megapulse* test governs the jurisdictional analysis under the CDA. *See Digital Sys. Grp., Inc. v. FEMA*, No. 25-cv-3634, 2025 WL 3876559, at *7 & n.2 (D.D.C. Dec. 15, 2025).

Coast Guard for [that] termination." ECF No. 18-1 at 13. They point to a section of the Coast Guard's contract with ACES providing that the agency may "require the Contractor to prohibit individuals from working on the contract if the Government deems their initial or continued employment contrary to the public interest for any reason, including, but not limited to, carelessness, insubordination, incompetence, or security concerns." ECF No. 18-1 at 13 (quoting ACES contract at 34). Thus, Defendants argue, Souders's retaliation claim is essentially contractual because it challenges the validity of his termination under those terms. *See id.* at 12–13.

Defendants are wrong for several reasons. First, Souders cannot invoke rights under a contract to which he is neither a party nor a beneficiary. The contract at issue is between the Coast Guard and *Souders's employer*—ACES—not between the Coast Guard and Souders himself. Souders insists that he "is not a party to the contracts identified by the government." ECF No. 19 at 12. And as far as the Court can tell, he is right. Indeed, nothing in the contract or the related Statement of Work suggests otherwise, and Defendants never offer any evidence or argument that Souders is a party.[5] And "the provisions of the CDA apply only to 'contractors,' *i.e.*, 'part[ies] to a Government contract other than the Government'"—and "those who are not in privity of contract with the government cannot avail themselves of the CDA's appeal provisions." *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1371 (Fed. Cir. 2009) (citation omitted). Thus, the CDA does not apply to claims pressed against the government by a contractor's employee like Souders. *See Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 120 (D.D.C. 2020) (holding that the CDA "[does not] permit civil actions by the employees of government contractors against the government"); *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 404 (2d Cir. 2015) (holding that

[5] Defendants do not argue that Souders is a third-party beneficiary under the contract. Even if they had, "the CDA does not permit appeals by . . . third-party beneficiaries of the prime contract." *Winter*, 570 F.3d at 1371.

the CDA "does not provide a remedy for subcontractors or employees of contractors"). For that reason, the situation here is readily distinguishable from those cited by Defendants involving claims asserted by prime contractors against the government. *See* ECF No. 18-1 at 13–14.

Second, and in any event, Souders alleges a violation of his right to engage in protected speech under the First Amendment—not rights conferred by an employment contract. In other words, his claim "challenges the government's directive that he may no longer work for the Coast Guard not because [it] violated a term of any contract . . . but because it violated the . . . First Amendment's Free Speech clause." ECF No. 19 at 10 (citation modified). Thus, he obviously asserts "rights exist[ing] prior to and apart from rights created under [any] contract." *Crowley*, 38 F.4th at 1107 (citation omitted). Courts have routinely reached this conclusion in circumstances like this one, even when the plaintiff is a prime contractor in privity with the government, who in theory could also assert rights under a contract. *See* ECF No. 19 at 9–11.

For example, in *Navab-Safavi v. Broad. Bd. of Governors*, a federal contractor alleged that her contract was terminated after she appeared in a YouTube video "protest[ing] U.S. involvement in the Iraq War." 650 F. Supp. 2d at 48. She asserted—much like Souders does here—that agency officials violated her First Amendment rights by "terminat[ing] her contract because of her speech as a private person on a matter of public concern." *Id.* at 53. In applying *Megapulse*'s first prong, the court determined that her claim was "based not on breach of contract, but on an alleged governmental infringement of constitutional rights which preexisted any contracts." *Id.* at 68 (citation modified). It did not matter, the court held, that the government had used its "contracting powers as a means to retaliate" against the plaintiff because that alone "d[id] not transform her claim into one arising under or relating to her contract." *Id.* (citation modified). The court also emphasized that plaintiff's claim did not implicate "whether the contract forbids termination," but only

"whether the Constitution forbids it." *Id.* (citation omitted). So too here.

As Souders notes, for these reasons, courts in other recent cases have similarly held that contractor claims alleging retaliation for protected speech implicate constitutional, not contractual, rights. *See* ECF No. 19 at 11; *see, e.g.*, *Am. Bar Ass'n v. DOJ*, 783 F. Supp. 3d 236, 243 (D.D.C. 2025) ("Because the source of the right underlying the [contractor's] First Amendment retaliation claim is the Constitution, not the cooperative agreements, its claim is not essentially a contract action.") (internal quotation marks omitted); *Am. Acad. of Pediatrics*, 816 F. Supp. 3d at 47 (holding that "the source of" the contractor's First Amendment retaliation "claim[] is not contractual in nature since [it] arise[s] out of rights protected not by contracts but rather by statutes and the Constitution"). Thus, even if Souders were in privity with the government, his First Amendment claim presents "'truly independent legal grounds' supporting the exercise of jurisdiction by this Court." *Am. Acad. of Pediatrics*, 816 F. Supp. 3d at 47 (quoting *Crowley*, 38 F.4th at 1107).

Both *Megapulse* prongs must be satisfied for a claim to fall within the exclusive jurisdiction of the Court of Federal Claims. *See Am. Acad. of Pediatrics*, 816 F. Supp. 3d at 47. As alluded to above, then, because Souders's First Amendment claim fails the first, the Court need not consider the second. *See id.* For these reasons, the Court will deny Defendants' motion to dismiss Count I for lack of subject-matter jurisdiction.[6]

[6] Defendants also move to dismiss the complaint under Rule 12(b)(6)—asserting, in a single line of their motion, that Souders "pleads insufficient facts in support of [his] claims." ECF No. 18-1 at 6–7. But apart from that bare assertion, Defendants do not otherwise argue that *Count I* fails to state a claim. Thus, "the Court will decline to do the government's work for it." *de Belinay v. Mayorkas*, No. 24-cv-240, 2025 WL 671120, at *7 (D.D.C. Mar. 3, 2025). "Because Defendants' motion makes no argument to dismiss" Count I for failure to state a claim, "it will not be dismissed." *Shoaie v. Blinken*, No. 24-cv-01513, 2024 WL 4697732, at *1 (D.D.C. Nov. 6, 2024).

### B. Souders's Claim for a Declaratory Judgment Must Be Dismissed, to the Extent It Asserts an Independent Cause of Action (Count II)

Souders's second cause of action seeks "a declaration . . . under the Declaratory Judgment Act . . . establish[ing] that Defendants do not have the authority to order [his] termination . . . in retaliation for the exercise of his First Amendment rights." Compl. ¶ 43. Defendants ask the Court to dismiss this claim because "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent cause of action," and they are right. ECF No. 18-1 at 18. "The Declaratory Judgment Act, which governs declaratory actions, provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration.'" *Sierra Club v. Palkowski*, No. 24-cv-741, 2025 WL 1492790, at *2 (D.D.C. Jan. 28, 2025) (quoting 28 U.S.C. § 2201(a)). But "[i]t is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (internal quotation marks omitted). Nor is "[a] count for declaratory judgment . . . cognizable as a separate cause of action." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013). *Id.* Rather, a request for a declaratory judgment "is more properly included in the [plaintiff's] prayer for relief." *Id.*

Souders seemingly suggests that he can assert a standalone claim for a declaratory judgment so long as his retaliation claim survives a motion to dismiss. *See* ECF No. 19 at 13 ("Because the government's argument that this Court lacks jurisdiction over Mr. Souders's First Amendment claim fails, so too does its argument that Mr. Souders's request for declaratory relief should be dismissed."). Not so. A declaratory judgment is a form of relief the Court may eventually award a party that, in the first instance, pleads a plausible claim for relief. But it is not a cognizable claim on its own. Thus, the Court will dismiss Count II to the extent that it purports to assert an independent cause of action, and construe Souders's request for a declaratory judgment as part of his

prayer for relief. *See Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C. 2019), *aff'd*, 995 F.3d 993 (D.C. Cir. 2021).

**C. Souders's Mandamus Claim Must Be Dismissed (Count III)**

Souders also requests, as an "alternative" basis for relief, a "writ of mandamus commanding Defendants to return him to the status quo ante by rescinding their order that he be terminated from his contractor position." Compl. ¶ 45. "The remedy of mandamus is a drastic one" and is "invoked only in extraordinary circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). To show entitlement to mandamus, a petitioner "must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id*. at 190.

Souders's allegations fall short on the third requirement because he has an adequate alternate remedy to obtain the relief he seeks—his First Amendment retaliation claim. Indeed, Souders asserts his mandamus claim "[in] the alternative," seemingly acknowledging that survival of any other claim in the complaint would extinguish it. Compl. ¶ 45. And courts have held that mandamus claims should be dismissed where, as here, another viable claim asserted in the complaint would afford the plaintiff the same relief. *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) (noting plaintiff's "mandamus claims would still be appropriately dismissed because [other asserted claims] would provide an adequate remedy for all of the policies or practices for which the plaintiff seeks relief"), *aff'd sub nom.*, 969 F.3d 406 (D.C. Cir. 2020). Prevailing on his First Amendment claim would afford Souders all the relief he seeks under the Mandamus Act—and he makes no argument to the contrary. Thus, the Court will dismiss Count III for lack of subject-matter jurisdiction. *See Burwell*, 812 F.3d at 189 (holding that the requirements for mandamus relief "are jurisdictional; unless all are met, a court must dismiss the case for lack of

jurisdiction").

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 18, is **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** that Count II—to the extent it asserts an independent cause of action—and Count III are **DISMISSED**.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 11, 2026